USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/2/2026__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEILA SROUR,

                            Plaintiff,

            -v-

CRYSTAL JING CHEN, ET AL.,

                            Defendants.

**REPORT AND**
**RECOMMENDATION**

25-CV-4620 (JHR) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Jennifer H. Rearden, United States District Judge:**

Plaintiff Leila Srour ("Srour" or "Plaintiff"), proceeding *pro se*, brings this action against Crystal Jing Chen and Peter Davis Claus-Chen (together, the "Chens"), and Petkey LLC. Plaintiff asserts claims for negligence, breach of contract, and intentional infliction of emotional distress. The Chens moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6). ECF No. 14. For the reasons described below, the undersigned respectfully **RECOMMENDS** that the motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

        A.      **Factual Background**

        The following facts are drawn from the Complaint ("Compl."), ECF No. 1, the Amended Complaint ("AC"), ECF No. 7, Srour's June 3, 2025 Declaration ("Srour 6/3/2025 Decl."), ECF No. 8, Plaintiff's Opposition to the Motion to Dismiss ("Opp."), ECF No. 22, Plaintiff's September 20, 2025 Declaration, ECF No. 25, Plaintiff's

1

October 6, 2025 Letter, ECF No. 33, and Plaintiff's October 22, 2025 Letter, ECF No. 37.

Srour purchased a Samoyed dog named Ice in or around January 2019. AC ¶ 7; Opp. at 1–2. She took Ice to a veterinary clinic for care and was identified as Ice's owner in the veterinary records. ECF No. 37-1.

Srour alleges that she temporarily entrusted Ice to the Chens in or around late 2022, but did not agree to relinquish ownership. Compl. ¶ 8. The Chens nonetheless took possession of Ice in 2023 and transported him to Illinois without Srour's consent.[1] AC ¶ 9; Srour 6/3/2025 Decl. at 1; ECF No. 33 at 1. The Chens also arranged with Petkey to transfer Ice's microchip registration.[2] Compl. ¶ 10; AC ¶ 11, 16; Opp. at 1, 3. Despite Srour's repeated demands, the Chens refused to return Ice. Compl. ¶ 9, 17; AC ¶ 10; Opp. at 1, 3. Following the loss of Ice, Srour has experienced, *inter alia*, daily stress, panic, disorientation, and difficulty sleeping and concentrating. Srour 6/3/2025 Decl. at 2–3. Srour was also hospitalized due to severe depression. ECF No. 25 at 7, 19.

---

[1] Plaintiff also states that "[i]t was through my father's betrayal that [Crystal Chen] unlawfully took possession of my dog, Ice." Srour 9/20/2025 Decl. at 19.

[2] Plaintiff claims that Petkey transferred the microchip without any investigation or verification. ECF No. 37 at 1. However, Plaintiff also filed a partial email, which does not specify the sender, recipient, or date of the communication, that requests approval of a microchip contact information transfer. Srour 9/20/2025 Decl. at 15.

### B.    Procedural History

Srour filed the Complaint on June 2, 2025.  ECF No. 1 ("Compl.").  The next day, Srour filed an Amended Complaint, ECF No. 7 ("AC"), and a declaration, Srour 6/3/2025 Decl.  Defendant Petkey LLC filed its answer on July 1, 2025.  ECF No. 13.

The Chens filed the instant motion to dismiss on July 7, 2025, ECF No. 14, with a supporting declaration, ECF No. 15, and memorandum of law, ECF No. 16.  On August 5, 2025, the Chens filed a Local Rule 12.1 Notice.  ECF No. 20.

Srour filed her opposition to the motion on September 2, 2025.  ECF No. 22.  On September 8, 2025, the undersigned entered an order reiterating the Local Rule 12.1 Notice and noting that Srour's opposition referenced exhibits that were not attached.  ECF No. 24.  The undersigned gave Srour a second opportunity to submit evidence to counter the Chens' motion.  *Id.*  Srour filed a declaration on September 20, 2025 with additional evidence.  ECF No. 25.  Srour also filed a letter to the court regarding jurisdiction, ECF No. 33, and another letter clarifying certain exhibits, ECF No. 37.

The Chens filed their reply brief on October 6, 2025.  ECF No. 31.

## II.    LEGAL STANDARDS

### A.    Standards for *Pro Se* Litigants

While *pro se* complaints are read liberally "to raise the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted), they still must state a plausible claim for relief.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  Thus, a district court should dismiss a *pro se* plaintiff's complaint if it "fail[s] to meet minimum pleading requirements."

3

*Kinsey v. Bloomberg*, No. 12-CV-8936, 2014 WL 630670, at \*3 (S.D.N.Y. Feb. 18, 2014).

Submissions made by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts are "obligated to construe a *pro se* complaint liberally"). As a result, the Court may consider allegations that appear in a *pro se* plaintiff's motion papers or other submissions as well as in her pleadings. *See, e.g., Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2281, 2022 WL 889213, at \*4 (S.D.N.Y. Mar. 25, 2022) (courts "may also consider factual statements made in the *pro se* Plaintiff's opposition to the motion to dismiss") (citing *Walker*, 717 F.3d at 122 n.1). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading; "dismissal . . . is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

**B.    Converting a Rule 12 Motion to a Rule 56 Motion**

In deciding a Rule 12 motion, "a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein." *Drew v. City of New York*, No. 18-CV-10714, 2019 WL 3714932, at \*2 (S.D.N.Y. Aug. 6, 2019) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

Rule 12(d) states, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent

4

to the motion." A court may decide either to "exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56." *Girardi v. Ferrari Express, Inc.*, No. 20-CV-4298, 2023 WL 2744027, at *3 (S.D.N.Y. Mar. 31, 2023) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)) (cleaned up).

A motion to dismiss can be converted to a motion for summary judgment if the plaintiff had "unequivocal notice of the meaning and consequences of conversion." *Cuffee v. City of New York*, No. 15-CV-8916, 2018 WL 1136923, at *5 (S.D.N.Y. Mar. 1, 2018) (cleaned up). In the case of *pro se* litigants, formal notice is "particularly important;" they "must have unequivocal notice of the meaning and consequences of conversion to summary judgment" because a *pro se* party "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Hernandez v. Coffey*, 582 F.3d 303, 307–08 (2d Cir. 2009) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)).

Here, the Chens submit material from outside the pleadings. ECF No. 15. The Chens filed and served the Rule 12.1 Notice advising Srour that she must oppose the motion by submitting evidence in support of her claims. ECF No. 20. The Court reiterated this notice to Srour and gave her a second opportunity to submit evidence. ECF No. 24.

Having reviewed these materials and the arguments made on this motion, the undersigned recommends that these materials be excluded and that the Chens' motion to dismiss not be converted to a motion for summary judgment. First, the

5

Chens do not expressly request such conversion.  Second, their substantive arguments in support of dismissal do not actually rely upon the materials outside the pleadings that they submitted.  Instead, the Chens' legal arguments are directed to the sufficiency of Srour's pleading.  Third, Srour disputes the evidence submitted and facts asserted therein.  Opp. at 2–3.  And, finally, the undersigned reviewed the materials submitted by the Chens, which are mainly pleadings filed in this case and a state court case, and found that they do not show the absence of any dispute of material fact.  Accordingly, the undersigned does not consider the materials outside the pleadings submitted by the Chens in connection with this motion and this motion should remain a motion to dismiss under Rule 12.

## III.   DISCUSSION

The Chens seek dismissal of the claims against them on two grounds: (1) lack of subject matter jurisdiction under Rule 12(b)(1), and (2) failure to state a claim under Rule 12(b)(6).

### A.    Srour Adequately Demonstrates Subject Matter Jurisdiction

The Chens argue that this Court lacks subject matter jurisdiction because the amount in controversy requirement for diversity jurisdiction is not met.  For the reasons described below, the Court should deny the motion to dismiss for lack of subject matter jurisdiction.

#### 1.    12(b)(1) Standards

"Federal district courts are courts of 'limited jurisdiction' and must confirm that they have subject matter jurisdiction over matters before them."  *Whittingham v. Tress*, No. 23-CV-6058, 2024 WL 3252595, at *4 (S.D.N.Y. July 1, 2024) (citing

*Durant, Nichols, Houston, Hodgsen & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009)). "Such a determination is a threshold issue." *Id.* (citing *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

"A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court 'lacks the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (summary order)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"Courts must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Whittingham*, 2024 WL 3252595, at *4 (quoting *Morrison*, 547 F.3d at 170) (cleaned up). "Although courts hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers, . . . pro se litigants must establish subject-matter jurisdiction." *Whittingham*, 2024 WL 3252595, at *5 (quoting *Hodge v. N.Y. Unemployment*, No. 24-CV-1631, 2024 WL 1513643, at *1 (E.D.N.Y. Apr. 8, 2024)); *see also Rimini v. J.P. Morgan Chase & Co.*, No. 21-CV-7209, 2022 WL 4585651, at *3 (S.D.N.Y. Sept. 29, 2022) ("Despite the solicitous pleading standard, a *pro se* plaintiff must still show facts establishing the Court's subject matter jurisdiction." (cleaned up)). A

district court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### 2.    Diversity Jurisdiction Exists

To invoke a federal court's diversity jurisdiction, a party must establish that: (1) the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs or interest; and (2) there exists complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a).

### a.    Amount in Controversy

The Chens argue that Srour fails to allege facts to support an amount in controversy exceeding $75,000.00. Specifically, the Chens complain that Srour has not sufficiently explained her damages calculations.

A party invoking a federal court's diversity jurisdiction has "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). The "reasonable probability" burden is not onerous at the pleading stage because there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (cleaned up); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

To overcome this "face of the complaint" presumption, a party opposing jurisdiction must show "to a legal certainty that the amount recoverable does not

meet the jurisdictional threshold." *Scherer,* 347 F.3d at 397 (cleaned up). There is a high bar for overcoming this presumption: "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (cleaned up); *see also Tongkook,* 14 F.3d at 785 ("Plaintiff's 'good faith' alone does not control where it is apparent that, 'to a legal certainty,' plaintiff could not recover the requisite jurisdictional amount.") (cleaned up). "Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Scherer,* 347 F.3d at 397 (cleaned up).

Srour alleges that "the amount in controversy exceeds $75,000.00, exclusive of interest of costs," AC ¶ 1, and seeks compensatory damages in excess of $75,000.00, punitive damages, and attorney's fees and costs. *Id.* (prayer for relief). Srour elaborates that she purchased Ice for $5,000.00, Opp. at 1, and seeks compensatory damages for emotional distress, mental anguish, and loss of companionship, as well as economic damages including veterinary expenses, registration fees, and travel costs, Opp at 5. She also claims $500,000.00 from Petkey for breach of contract and $100,000.00 from each of the Chens for wrongful possession, intentional harm, and fraudulent acts. Opp. at 5.

The Chens argue that Srour does not sufficiently allege facts establishing the amount in controversy. The case upon which they rely, *Mariano v. 61-63 Bond St. F & B*, No. 22-CV-7189, 2023 WL 2329854 (E.D.N.Y. Mar. 2, 2023), is distinguishable. In *Mariano*, the court held that where plaintiff alleged a typical range of recovery between $30,000.00–$125,000.00 and did not include any factual allegations to

suggest that her damages would exceed the lower end of that range, the complaint did not plausibly support damages in excess of $75,000.00. *Mariano*, 2023 WL 2329854, at *4. Here, Srour claims damages that clearly exceed the jurisdictional threshold, even when excluding attorney's fees.[3] While the undersigned has serious doubts as to whether Srour can ultimately recover the amounts she claims, those doubts do not warrant dismissal.

The Chens do not demonstrate Srour's "legal impossibility of recovery" and therefore fail to rebut the presumption that Srour's allegations constitute "a good faith representation of the actual amount in controversy." *Scherer,* 347 F.3d at 397.

### b.      Complete Diversity

For diversity purposes, an individual is a citizen of the state where she is domiciled. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). "An LLC is a citizen of each state of which its members are citizens." *Aurora Loan Servs. LLC v. Sadek*, 809 F. Supp. 2d 235, 239 (S.D.N.Y. 2011).

Srour is a citizen of California. ECF No. 25 at 2; ECF No. 34 at 2. The Chens are citizens of New York, AC ¶¶ 4–5; ECF No. 34 at 2. Petkey LLC is a citizen of Delaware, where its sole member, PetKey Holdings Inc., is incorporated and

---

[3] "Attorney's fees typically are not considered in calculating the amount in controversy threshold unless 'they are recoverable as a matter of right pursuant to statute or contract,' which is not the case here as the award of attorney's fees is discretionary with the Court." *Id.* at *5 (quoting *Cohen v. KIND L.L.C.*, 207 F. Supp. 3d 269, 272 (S.D.N.Y. 2016))

therefore is a citizen.  ECF No. 45.[4]  Because no defendant is a citizen of the same state as any plaintiff, Srour has sufficiently demonstrated complete diversity.

### 3.    No Federal Question Jurisdiction Exists

Srour also states that this case involves the "unlawful taking and continued deprivation of Plaintiff's service dog, 'Ice,' constituting violations of the Fourth and Fourteenth Amendments to the United States Constitution."  ECF No. 34 at 1. Reading Plaintiff's submissions liberally, the undersigned considers whether there is federal question jurisdiction.  Because Srour does not claim that any of the defendants is a state actor or acted under color of state law, there can be no liability under the U.S. Constitution and therefore no federal question jurisdiction exists. *See Cheeks v. Montefiore Med. Ctr.*, No. 23-CV-2170, 2023 WL 8235755, at *2 (S.D.N.Y. Nov. 28, 2023) (holding that constitutional violations may only be maintained against state actors).

### B.    Failure to State a Claim

Srour asserts three causes of action: (1) negligence, (2) breach of contract, and (3) intentional infliction of emotional distress ("IIED").  Additionally, in light of the "special solicitude" afforded to *pro se* litigants in this Circuit, the undersigned must read Srour's submissions liberally to raise the strongest claims they suggest, *see Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), and therefore considers whether Plaintiff has plausibly alleged conversion.  The gist of Srour's complaint is that the

---

[4] The undersigned has directed Petkey to supplement its corporate disclosure statement.  ECF No. 46.  If new information about Petkey destroys complete diversity, the Court must dismiss the case *sua sponte*.  No such information has been presented at this time.

Chens took her dog without authorization.  This is a classic claim for conversion. This legal theory fits Srour's allegations better than the other causes of action that Srour pleads.

As described below, the Court should grant the motion to dismiss as to Srour's negligence and intentional infliction of emotional distress claims and deny the motion as to claims for breach of contract and conversion.

### 1.    12(b)(6) Standards

To survive a motion to dismiss, a complaint must include "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *Acticon AG v. China N.E. Petrol. Holdings Ltd.*, 692 F.3d 34, 37 (2d Cir. 2012).  However, a court need not "accept as true legal conclusions couched as factual allegations." *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009).

### 2.    Negligence

"Under New York law, a negligence claim requires '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the

plaintiff as a result thereof.'" *Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293 (S.D.N.Y. 2010), *as amended* (July 12, 2010) (quoting *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)).

Srour has not pleaded the existence of a duty imposed by law in this case, nor has she cited any case in which a duty has been imposed in a similar circumstance. The existence of a duty is a required element of a negligence claim: "In the absence of a duty, as a matter of law, no liability can ensue." *Id.* (quoting *Alfaro*, 210 F.3d at 114); *see also Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (1985) ("A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff.").

Accordingly, Srour's negligence claim should be dismissed.

### 3.    Breach of Contract

To establish a breach of contract, a plaintiff must plead the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000). In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue. *See Levy v. Bessemer Trust Co., N.A.*, No. 97-CV-1785, 1997 WL 431079, *5 (S.D.N.Y. July 30, 1997).

Srour states that she had an agreement with the Chens for the temporary care of her dog, and this agreement did not include relinquishing ownership of her dog. While it is a close call due to Srour's sparse allegations, drawing all reasonable

inferences in her favor, Plaintiff adequately alleges the existence of an oral agreement for the Chens to care for her dog temporarily and to return the dog thereafter.  Srour alleges that the Chens breached this agreement by not returning the dog.

Srour also alleges that she has been damaged by the Chens' breach.  Plaintiff has clearly stated that the alleged breach resulted in the loss of her dog, which cost her $5,000.00.  *See* AC ¶ 7; Srour 6/3/2025 Decl. at 1; Opp. at 1–2.  Additionally, Srour states that she has incurred costs and expenses, including veterinary expenses, registration fees, and travel costs.  *See* Opp. at 5.  While the Chens raise serious questions as to whether these damages were actually incurred and can be recovered, "such questions are appropriately handled at summary judgment on trial, not on a motion to dismiss."  *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) (plaintiff "need only allege that [she] was damaged; [she] is not required to specify the measure of damages nor to plead proof of causation").

Accordingly, the Court should find that Srour has plausibly alleged a claim for breach of contract.

### 4.    Intentional Infliction of Emotional Distress

Under New York law, to plead a claim for IIED, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Stuto v.*

*Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).  The conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985).  Due to this very high threshold, claims for intentional infliction of emotional distress "generally 'do not survive dispositive motions.'" *Allam v. Meyers*, No. 09-CV-10580, 2011 WL 721648, at *6 (S.D.N.Y. Feb. 24, 2011) (quoting *Hallgren v. Bell Atlantic Corp.*, No. 99-CV-11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000)).

Even accepting Srour's allegations as true and drawing all reasonable inferences in her favor, the Chens' alleged actions do not approach the type of egregious conduct necessary to support an IIED claim.  Generally, cases in which courts sustain IIED claims involve some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy.  *See Stuto*, 164 F.3d at 828–29 (listing cases).  The conduct alleged here is easily distinguished from such cases.  In sum, Srour alleges that the Chens improperly refused to return her dog after agreeing to taking care of it temporarily.  Regardless of Srour's depth of feeling about the matter, this is little more than a dispute about whether Srour transferred the dog temporarily or permanently, which is a far cry from the type of facts that can support an IIED claim.

15

The Court should therefore find that Srour has failed to state an IIED claim.

### 5.    Conversion

"Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 628 (2d Cir. 2020) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)) (cleaned up). "The two key elements of conversion are (1) the plaintiff's possessory right or interest in the property . . . and (2) the defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights." *Id.* at 629 (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006)).

"To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Soroof Trading Dev. Co., Ltd. v. GE Fuel Sys., LLC*, 842 F. Supp. 2d 502, 514 (S.D.N.Y. 2012). Additionally, "a plaintiff alleging conversion need not show fault by the defendant." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012).

Here, Srour alleged that (1) the Chens retained her dog without authorization, (2) the Chens now assert ownership over the dog, which belongs to Srour, including by transferring the dog's microchip registration, (3) Srour has demanded that the Chens return her dog, and (4) the Chens have, to date, refused to return her dog. While Srour does not expressly plead a cause of action for

16

conversion, when read to raise the strongest arguments they suggest, her plausible allegations support a claim for conversion.

## IV.    CONCLUSION

For the reasons described above the undersigned respectfully **RECOMMENDS** that Chens' motion to dismiss, ECF No. 14, be **GRANTED IN PART** and **DENIED IN PART**.  The motion to dismiss for lack of subject matter jurisdiction should be denied, and Plaintiff's negligence and intentional infliction of emotional distress claims should be dismissed.  Claims for breach of contract and conversion should proceed.

The Clerk is respectfully directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  See Fed. R. Civ. P. 6(a), (b), (d).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jennifer H. Rearden, United States Courthouse, 500 Pearl Street, New York, New York 10007-1312.  Any requests for an extension of time for filing objections must be directed to Judge Rearden.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 2, 2026
       New York, New York

_____
Henry J. Ricardo
United States Magistrate Judge

18